In the Matter of the Application of C. RAYMOND NORTH and Others, Appellants, for an Order of Mandamus Directed to MICHAEL J. FOLEY, as Mayor of the City of Cohoes, and Others, Respondents.

Third Department, June 30, 1933.

*Walter H. Wertime* [*John A. Brady* of counsel], for the appellants.

*Dennis S. Dawson,* for the respondents.

HEFFERNAN, J. Petitioners, taxpayers of the city of Cohoes, instituted this proceeding for a peremptory mandamus order against the mayor, comptroller, treasurer and commissioner of public works of the city to compel them to permit petitioners and their attorney or accountant to examine and inspect certain books, records and vouchers under the care, custody and control of such officials.

The moving papers disclose that petitioners, six in number, are residents and taxpayers of the city of Cohoes and the owners of real estate therein assessed at $708,610, upon which assessment they paid taxes during the year 1932 and on which assessment they are liable for taxes for the current year. In addition to that they paid to the city for water rents and charges for that year $2,304.39. They are also liable for water rents for the current year.

Petitioner North is the chairman of the taxpayers' association of the city, of which organization the other petitioners are members.

In February, 1932, the taxpayers' association through North and a certified accountant were engaged in making an examination of the books and records of the city. They were about to make a similar examination of the records of the water department and the mayor refused to permit them to do so.

On January 3, 1933, the taxpayers' association addressed a communication to the mayor requesting permission to make an examination and inspection of the receipts and expenditures of the water department for a period of years ending December 31, 1932, and also an examination of the physical condition of that department by an engineer, and also requesting permission to make an audit of the financial condition of the city as of December 31, 1932, the 1932 budget and the application of its receipts and expenditures and the proposed 1933 budget. After the receipt of this communication by the mayor a conference was held between himself and petitioner North at which time the mayor suggested that he would request the Comptroller of the State of New York to make an audit of the city's books, including the matters outlined in the communication of the taxpayers' association. The mayor stated that such an examination should be acceptable to the city and the taxpayers. North refused to consent to this and insisted that the petitioners be permitted to make their own examination. The mayor thereupon agreed to such an examination at a date to be fixed by La Belle, the comptroller of the city. The petitioners

repeatedly attempted to agree upon a date with La Belle but were unsuccessful. On January 18, 1933, the mayor addressed a communication to North in which he practically declined to permit the examination. On January 24, 1933, petitioners made a formal request upon respondents to make the desired examination. At that time the mayor stated that auditors from the State Comptroller's office were going to make an examination and that petitioners would not be permitted to do so.

On January 30, 1933, on the application of petitioners, an order was granted by a justice of the Supreme Court directing respondents to show cause why a peremptory mandamus order should not be granted requiring the officials in question to permit the desired examination and inspection. It is rather singular that on January 31, 1933, the State Comptroller issued a certificate that, pursuant to article 3 of the General Municipal Law, he had designated and appointed Mr. Fred M. Hart " to audit and examine the accounts and fiscal affairs of the City of Cohoes, Albany County, and to report thereon in detail as soon as practicable."

The court at Special Term denied petitioners' application. The learned judge who presided, in his memoranda, stated he did so in the exercise of discretion and without prejudice to any subsequent application for the same or similar relief. From that order the petitioners have come to this court.

At common law every person is entitled to the inspection, either personally or by his agent, of public records, including legislative, executive and judicial records, provided he has an interest therein which is such as to enable him to maintain or defend an action for which the documents or records sought can furnish evidence or necessary information. (20 Am. & Eng. Ency. of Law, 522, 523; 53 C. J. 624; 23 R. C. L. 160; *Matter of Egan*, 205 N. Y. 147.) In this State the right of inspection is expressly conferred upon taxpayers by statute (General Municipal Law, § 51). The legislative intention to recognize the right of any person, irrespective of his interest, to inspect the public records in municipal offices is plainly indicated by that statute, which provides: " All books of minutes, entry or account, and the books, bills, vouchers, checks, contracts or other papers connected with or used or filed in the office of, or with any officer, board or commission acting for or on behalf of any county, town, village or municipal corporation in this State are hereby declared to be public records, and shall be open, subject to reasonable regulations to be prescribed by the officer having the custody thereof, to the inspection of any taxpayer."

The respondents seek to justify the order appealed from on the ground that the State Comptroller is about to make an examination,

that any investigation by petitioners would interrupt unduly the business in the respective offices of the respondents and that the granting or refusal of the order is in the discretion of the court.

It is plain to us that the Legislature intended to assert the right of all citizens to examine and inspect the public records in public offices for any legitimate purpose, subject to such rules and restrictions as are reasonable and proper under the circumstances. After a judicial proceeding has been invoked, as in the present case, for the purpose of obtaining an examination, it cannot be thwarted or defeated by the decision of the State Comptroller to make an examination in lieu of the one sought.

The respondents are the agents of the people in managing and conducting the business of the city. They are directly responsible to the people for the honest and faithful discharge of the duties with which they are invested. The people prescribe their duties and pay their salaries. The officials are required to keep a true account of the expenditure of the public moneys. Taxpayers should not be denied access to their own books for the purpose of ascertaining how their money is expended and how their business is conducted. A municipal corporation can have no private books, not even of accounts, not open to the inspection of its citizens. In the language of the court in *Herbert* v. *Ashburner* (1 Wils. K. B. 297), " these are public books which everybody has a right to see." The doings of a municipal corporation and the doings of its officers, and the records and files in their offices must be open to the public. (19 R. C. L. 1173.)

It would be a harsh interpretation of our law, and one, in our opinion, opposed to sound reason, to deny any taxpayer the right, subject to reasonable rules and regulations, to examine the public records of his city in order to ascertain whether the public officers had properly administered the funds of the city to which such taxpayer had been required to contribute. There can be no good reason for depriving a citizen of this right, for it is evident that the exercise thereof will serve as a check upon dishonest public officials and conduce to the betterment of the public service. (*State ex rel. Colscott* v. *King*, 154 Ind. 621.) It is obvious that in making such an examination the taxpayer acts, in a very real sense, not only for himself, but for all other taxpayers, and acts, therefore, in the capacity, as it were, of a trustee for all. The exercise of such a power cannot be otherwise than salutary, because the knowledge that it can be exercised by a taxpayer, and may be exercised when the public good shall seem to demand it, cannot result otherwise than in producing an added sense of responsibility in those who administer the affairs of municipal corporations.

It is true, of course, that such an examination must necessarily, to some extent, interrupt the ordinary and usual course of business in public offices and require of the officers in charge thereof some additional duties for the time being. We can perceive, however, no danger of abuse or inconvenience likely to result from the right to make such an examination where the same is under the supervision of the court.

We are in accord with the proposition of law given so much emphasis in the brief of respondents that mandamus is an extraordinary remedy not demandable as a matter of right, and whether it shall be granted in a given case rests in the sound discretion of the court. In discussing this subject the Court of Appeals very recently said (*Matter of Oystermen's Dock Co.* v. *Downing,* 258 N. Y. 156): "While mandamus is a remedy to be granted in the discretion of the court and not as matter of right, that discretion should be exercised with proper regard for established legal principles and not arbitrarily withheld to thwart legitimate action of public officers and to nullify vested legal rights." The order which petitioners sought was in the public interest. They established a clear legal right to that relief.

We think that the exercise of a sound judicial discretion requires the granting of their application with proper safeguards for the protection of the rights of all parties in interest.

The order appealed from should be reversed, with costs and disbursements, and the application granted, with fifty dollars costs and the matter remitted to the Special Term with directions to proceed in accordance with this opinion.

HILL, P. J., RHODES and CRAPSER, JJ., concur; BLISS, J., concurs in the result, with a memorandum.

BLISS, J. (concurring). I concur in the result reached by my brother HEFFERNAN. As to the right of the petitioners to an examination of the municipal records there can be no doubt. The only question here is whether the court below should have granted the application and provided the conditions under which the examination might be conducted or denied the application in the exercise of discretion without prejudice as to a renewal thereof.

It was conceded upon the argument that the State Comptroller's examination had then been completed, a subsequent application by the same petitioners granted by the same justice and petitioners were then having their examination. The ultimate outcome was the same and petitioners have not been deprived of any of their rights. The only difference was that the petitioners have been compelled to make a second application to the court. This should have been

unnecessary. The first application should have been granted and reasonable restrictions as to the conduct of said examination imposed both as to time and manner. This would have obviated another application to the court and also prevented any interference from other sources with petitioners' right of examination.

The question may now be academic; orderly procedure, however, requires that the order should be reversed, the application granted and the proceeding remitted to the Special Term to impose such conditions, if any, as are now necessary for the reasonable conduct of the examination.

Order reversed, on the law and facts, with ten dollars costs and disbursements, and application granted, with fifty dollars costs, and matter remitted to Special Term for action in accordance with opinion.