STATE ex rel. HOLLORAN, Relator, v. McGRATH, County Clerk, Respondent.

(No. 7,691.)

(Submitted May 3, 1937.   Decided May 5, 1937.)

[67 Pac. (2d) 838.]

*Mr. T. B. Weir,* for Relator, argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, *Messrs. Carl N. Thompson* and *Mark H. Derr,* Assistant Attorneys General, and *Mr. H. A. Tyvand,* Deputy County Attorney of Silver Bow County, for Respondent, submitted a brief; *Messrs. Thompson, Derr* and *Tyvand* argued the cause orally.

492

HONORABLE CHARLES B. ELWELL, District Judge, sitting in place of MR. JUSTICE ANGSTMAN, absent, delivered the opinion of the court.

This is an original application by the state, on the relation of Joseph W. Halloran, for a writ of mandate directed to Addis A. McGrath, as county clerk and recorder of Silver Bow county, State of Montana, as respondent, to compel him to permit the relator, as a citizen, resident, and legal voter, and all persons similarly situated, to inspect certain petitions for referendum, or parts or portions of petitions for referendum, while in the possession of the respondent pursuant to section 101 of the Revised Codes, which section prescribes the method of carrying out the provisions of section 1 of Article V of the Constitution of the State of Montana, relative to referendum petitions.

Upon the filing of the application and the supporting affidavit, an alternative writ of mandate was issued by this court. The respondent has filed a motion to quash, and the matter has been submitted to this court upon the above-mentioned papers and pleadings.

The application for the writ and the supporting affidavit set out, in substance, the following facts:

First, that the petitioner is a citizen, resident, and legal voter of the State of Montana;

Second, that the respondent is the clerk and recorder of Silver Bow county, state of Montana;

Third, the enactment by the Twenty-fifth Legislative Assembly of the State of Montana, and the approval by the Governor, of a bill for an Act known and designated as Senate Bill No. 71, which has become and now is Chapter 30 of the Laws of the Twenty-fifth Legislative Assembly of the State of Montana of 1937;

Fourth, that since the enactment and approval of Senate Bill No. 71, proceedings have been commenced, and are now being carried on, to refer the Act to the legal voters of the state for their approval or rejection at the polls, and to cause the bill to become inoperative until such time as it shall be passed upon at the polls;

Fifth, that the Attorney General, in April, 1937, rendered to the Secretary of State a written opinion to the effect that when such referendum petitions are presented to county clerks for the purpose of comparison and certification, as provided in section 101, supra, no person save the county clerk has the legal right to examine the petitions or the signatures thereon;

Sixth, that either the Attorney General, or the Secretary of State, or both, have advised the county clerks, and particularly the respondent of the opinion of the Attorney General;

Seventh, that respondent, as county clerk, has in his possession for the purposes set forth in section 101 of the Revised Codes of 1935 one or more of such petitions for referendum, or sections of petitions for referendum;

Eighth, that relator has demanded of respondent the right to inspect the petitions and sections of petitions in the office of respondent, for the purpose of ascertaining if the same are in the form required by law, and for the further purpose of ascertaining whether signatures thereon are the genuine signatures of legal voters in such county, and to that end to compare the signatures on the petitions or sections thereof with the signatures on the registration books and blanks in the office of the respondent;

Ninth, that respondent wrongfully and unlawfully refused to permit relator to examine the petitions or sections of petitions or the signatures thereon;

Tenth, that pursuant to the laws of Montana the county clerks will shortly be required to cancel all registrations of electors and burn all card indexes, registry cards, and affidavits thereto, and all copies of registration books used at any prior elections, and the means of comparison of signatures on the referendum petitions will be lost to relator;

Eleventh, that relator has a legal right to examine the petitions and sections of petitions and the signatures thereon, which right is being denied to him by the respondent, and that relator is without a plain, adequate, or speedy remedy at law.

The motion to quash filed by the respondent is predicated upon the following grounds: First, that the application for the writ of mandate does not state facts sufficient to entitle relator to the relief for which he prays; second, that it is not alleged in the application for the writ that the referendum petitions were either filed or recorded in the office of the county clerk and recorded, in and for the county of Silver Bow, State of Montana; third, that it does not appear from the application that the relator is a party beneficially interested.

The matter thus resolves itself into a question of law for the court. The second and third objections above mentioned are of prime importance, and if they are answered, we shall, of necessity, have found the answer to the first objection that the application does not set forth facts sufficient to entitle relator to the relief demanded.

The court must, of course, take as admitted and as true the allegations of the application and the supporting affidavit. The motion to quash performs the same duty as a general demurrer. (*State ex rel. State Pub. Co.* v. *Hogan,* 22 Mont. 384, 56 Pac. 818.)

We may first dispose of the objection that the application does not show that the relator is a party beneficially interested. The petition does show that the relator is a citizen, resident, and legal voter of the State of Montana. The supporting aff-

496

davit also contains the same allegations. The right and capacity of the relator to maintain an action of this character, as an elector of the state to compel its officers to perform their duties, is settled by a long line of decisions in this state, beginning with *Chumasero* v. *Potts*, 2 Mont. 242.

We then come to the disposition of the second question raised: That it is not alleged in the application for the writ that the referendum petitions were either filed or recorded in the office of the county clerk and recorder in and for Silver Bow county, State of Montana. It is, of course, admitted by the motion to quash that the respondent has in his possession, for the purpose of comparison and certification, certain petitions for referendum or sections of petitions for referendum. The true question raised, therefore, is whether the petitions or sections of petitions in the hands of the county clerk and recorder for that purpose are at that time and place subject to public inspection. It is undisputed that when the petitions come to the Secretary of State with the certificates of the county clerks they are public records and subject to inspection.

In the course of the argument, it was suggested that this action ██ is primarily an attack upon the office of the Attorney General. We are not interested in the motives actuating the relator in demanding a right, if he is in law entitled to make that demand.

The respondent argues that the referendum petitions are not ██ public records while in the possession of the county clerk and recorder, for the reason that they are not marked as filed; neither are they recorded there, but he simply has them for the specific purpose of checking and comparing signatures, and attaching his certificate. It was argued that they were not public records for the reason that they might be returned to the person who delivered them to the county clerk and recorder. However, section 101 of the Revised Codes of 1935, after setting forth the maximum time such petitions may be held by the county clerk and recorder, specifically provides: "At the expiration of such time he [the county clerk and recorder] shall forward the same to the secretary of state, with his certificate attached

thereto, as above provided." This should effectively dispose of any contention that the clerk and recorder may return the petitions to the party delivering them, or to anyone else, and thereby return them to the control of private individuals. It may be interesting to note at this point that the Oregon statute is practically identical with the Montana statute, except on this point, and that the Oregon statute (Or. Code 1930, sec. 36–2004) provides that after certification by the county clerk and recorder, the petitions shall be returned to the party delivering them. If our legislature had intended that these petitions should ever be returned to the control of a private individual, it could easily have enacted a like provision.

As a practical proposition, the right of an elector to examine these petitions while in the hands of the county clerk and recorder is much more appealing than the later right of examination while in the hands of the Secretary of State, for the reason that the facilities for comparison of signatures are in the hands of the county clerk and recorder, whereas a comparison after the petitions have reached the Secretary of State could only be accomplished by the taking of photostatic copies of the signatures, and a return thereof to the various counties for the purpose of comparison of the signatures on hand in the respective counties.

The right of inspection of public documents is not entirely a matter of statute. At common law every person was entitled to the inspection, either personally or by his agent, of public records, including legislative, executive, and judicial records, provided he had an interest therein such as to enable him to maintain or defend an action for which the documents or records sought could furnish evidence or necessary information. (*North* v. *Foley*, 238 App. Div. 731, 265 N. Y. Supp. 780.)

In this state the right is expressly conferred by statute. We have three Code sections dealing with this question of public documents. The first is section 4810, Revised Codes of 1935, dealing specifically with records and other papers on file with the county clerk and recorder; it provides that they

must, during office hours, be open for the inspection of any person who may desire to inspect them, and may be inspected without charge. The next is section 10540, Id., defining public records, and includes "the written acts or records of the acts of the sovereign authority." Section 10542, Id., provides: "Every citizen has a right to inspect and take a copy of any public writings of this state, except as otherwise expressly provided by statute." If these petitions for referendum are public documents in the hands of the county clerk and recorder, then they are not specifically excepted by any statute.

It was argued that such petitions could not be classed as records of the acts of the sovereign authority. But we do find that sections 1 and 2 of Article III of the Constitution of the State of Montana vest the sovereign power in the people, viz.: All government of right originates with the people, is founded upon their will only, and is instituted solely for the good of the whole. And the electors of this state, when they exercise the right of referendum, are exercising that right of sovereignty directly, whereas in almost every other instance they exercise that right through their elected and appointed representatives.

But if these papers are not public records, we have still another section dealing with such matters which extends beyond the matter of "public records" and eliminates the necessity of a precise definition of what constitute public records. That section is 455, Revised Codes of 1935, and reads as follows: "The public records *and other matters* in the office of any officer are at all times, during office hours, open to the inspection of any person." This section is identical with section 1032 of the California Political Code, and in construing that section the supreme court of that state held, in *Coldwell* v. *Board of Public Works,* 187 Cal. 510, 202 Pac. 879, that estimates, plans, drawings, maps, and other data prepared by the assistants and subordinates of the city engineer of the city and county of San Francisco, to be submitted to him for his approval, in connection with the construction of a municipal water supply system of which the engineer had charge as an officer of the board of public works, are not, before approval by the engineer, "pub-

lic records'' open to inspection by any citizen of the state, but may be inspected as ''other matters in the office of any officer'' within Political Code, section 1032, notwithstanding the tentative character thereof.

Of course, the right to inspect is always subject to reasonable ▮ regulation, but it must also be borne in mind that such regulation must be reasonable and not of such arbitrary nature as to in effect deny to the applicant the right granted him by law.

The peremptory writ asked for will issue, and, that there ▮ may be no further confusion, it is ordered that the time from April 29, 1937, when demand for such inspection was refused, to the time of service of the peremptory writ upon the county clerk and recorder of Silver Bow county, both dates inclusive, shall not be considered by the county clerk and recorder in computing the time within which he must complete his verification and certification, and forward such petitions or sections of petitions to the Secretary of State, as provided by section 101 of the Revised Codes of 1935.

Mr. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.