COURIER–JOURNAL & LOUISVILLE TIMES COMPANY, Petitioner,

v.

L. R. CURTIS, Judge, Jefferson Circuit Court, Criminal Branch, Second Division, et al., Respondents.

Court of Appeals of Kentucky.

May 22, 1959.

Rehearing Denied June 24, 1960.

Wyatt, Grafton & Grafton, Edgar A. Zingman, Louisville, for petitioner.

Leo T. Wolford, Robert P. Hobson, Louisville, for respondents.

BIRD, Judge.

The petitioner, Courier-Journal and Louisville Times Company, is the publisher of two daily newspapers in the City of Louisville.

The respondent, L. R. Curtis, is a judge of the Jefferson Circuit Court and the respondent, James Yoder, is a stenographic reporter for that court.

William Floyd Owen was twice charged with murder in the Jefferson Circuit Court. He was tried and convicted before Judge Curtis on the trial of one case and given the death penalty. He filed a·motion for new trial. This motion and the other murder charge were pending before Judge Curtis. One or the other of the cases was called. Owen expressed his desire to make a statement privately to Judge Curtis in chambers and asked that members of the press be excluded. Members of the press, including petitioner's representatives, were directed to withdraw. Upon their withdrawal Owen made his statement to Judge Curtis. The court reporter took the statement in shorthand in the presence of counsel for the defendant and the Commonwealth.

The petitioner requested that the shorthand notes be transcribed and that it be furnished a copy for the sole purpose of disseminating the news. No other interest is alleged or proven by the petitioner.

The judge and the reporter refused petitioner's request.

Petitioner contends that the statement of Owen is a public record and that it has a right to inspect it and procure a transcribed copy of it. This action demands that this Court invoke its injunctive processes to compel the judge and reporter to comply with its request.

For the purpose of this decision we find it unnecessary to determine whether the Owen statement is or is not a public record. If the Owen statement is a public record the paramount questions are these: (1) What right of inspection does the petitioner have? (2) Under what conditions may it enforce its right by injunctive process?

▮ The petitioner·has the same right as any other member of the public. Constitutional provisions concerning freedom of the press are not involved in this action. The press has no greater right to the information sought than any other member of the public. In Riley v. Lee, 88 Ky. 603, 11 S.W. 713, 714, we said as follows:

"* * * By the provisions of the United States and the state constitu-

tions guarantying the 'freedom of the press' it was simply intended to secure to the conductors of the press the same rights and immunities that are enjoyed by the public at large.* * *"

What then is the right of a member of the public to inspect a public record and under what conditions may he enforce his right by mandamus?

In the absence of constitutional or statutory authority for the inspection of public records we must look to the common law.

The common law rule is concisely stated in 45 American Jurisprudence, pages 427–428 as follows:

" * * * Every person is entitled to the inspection, either personally or by his agent, of public records, including legislative, executive, and judicial records, provided he has an interest therein which is such as would enable him to maintain or defend an action for which the document or record sought can furnish evidence or necessary information. This rule, it is said, is not so much a denial of the right of every citizen to inspect the public records and documents as a declaration of the interest which a private individual must have to avail himself of the extraordinary writ of mandamus to enforce his right. In theory the right is absolute, yet in practice it is so limited by the remedy necessary for its enforcement that it can be denominated only a 'qualified right.' The existence of a suit is not, however, a sine qua non for the exercise of the right."

We recognized and adopted this rule in the case of Fayette County v. Martin, 279 Ky. 387, 130 S.W.2d 838, 843. There we said as follows:

"Appellants cite the following statement of this common law rule, upon which they rely as sustaining and authorizing their right to inspect these franchise tax reports, which is found in 53 C.J. § 40, page 624: '*At common law a person may inspect public records in which he has an interest* or make copies or memoranda thereof, when a necessity for such inspection is shown and the purpose doesn't seem to be improper, *and where the disclosure would not be detrimental to the public interest.*'

"This common law rule is further thus stated in 23 R.C.L. § 10 page 160: 'It is quite generally conceded that there is no common law right in all persons to inspect public documents or records; and that right, if it exists, depends entirely on the statutory grant. But at common law, every person is entitled to the inspection, either personally or by his agent, of public records, including legislative, executive, and judicial records, *provided he has an interest therein which is such as would enable him to maintain or defend an action for which the document or record sought can furnish evidence or necessary information.*'

"*Conceding these to be proper statements of the general common law rule invoked by appellants, declaring the public's right to inspect and examine all public records in which they possessed the required interest,* the next question arising and presented for decision is whether or not the appellants' asserted common law right to inspect these records has been lost or qualified by the express inhibitions and provisions of the statutory enactment, section 4114i–13, and its later amendments." (Emphasis ours.)

See also 34 Cyc. 592; State ex rel Holloran v. McGrath, 104 Mont. 490, 67 P.2d 838; North v. Foley, 238 App.Div. 731, 265 N.Y.S. 780.

Kentucky has neither constitutional nor statutory provisions for public inspection of judicial records. The common law rule approved in Fayette Coun-

ty v. Martin will therefore be applied. Without the interest defined in the rule the right of inspection does not exist and without the right of inspection there is no right to mandamus or other mandatory process. Generally the interest required under the rule must be alleged and proven. However, in order to effectuate the notice-giving purpose of various recording acts such interest shall hereafter be presumed as to the following records:

(1) Records of all papers, documents and instruments required or permitted by statute to be recorded, or noted of record, in books provided by public funds for that purpose.

(2) All financial records required by statute to be kept in books so provided.

The presumption shall govern where papers, documents and instruments are required or permitted by statute to be recorded in such books and have been lodged for that purpose but unrecorded.

█ It is apparent that the common law right to inspect public records is far from absolute. Even in cases where the proper interest is shown or presumed the right to inspect may be denied where the disclosure would be detrimental to the public interest, and the right may always be reasonably regulated by the custodian so that such inspection will not interfere with the proper conduct of his office or the proper administration of the affairs of the agency served by him.

█ The petitioner neither alleges nor proves the interest required, and the matter involved is not such paper, document or instrument as would be governed by the presumption stated. Having failed to establish a right to the relief sought the petition is dismissed.

STEWART and MOREMEN, JJ., dissenting.

█

MILLIKEN, Judge (Concurring).

I concur in the conclusion of the majority opinion, but do not altogether agree with the reasoning by which that conclusion was reached. I think the writ was properly denied upon these two grounds: (1) There was no public record to which the petitioner had the right of access; and (2) it was within the discretionary power and right of the trial court not to require the transcript to be made and filed of record.

Let it be conceded that the trial of a case—particularly of a criminal prosecution—should take place under the public eye, although the constitutional right of a public trial is to safeguard the rights of the accused person and is for his benefit and is not the right or benefit of the state or any one else. Let it be granted also that publication of the proceedings taken at the trial of a Commonwealth case comes within the broad term of "freedom of the press."

The hearing was no star chamber proceeding. The Commonwealth was represented by its attorney, and the defendant was present in person and represented by his attorney. Not everything said and done during the course of a trial is in open court or is a public proceeding. Proceedings before the court in chambers at which, in a criminal case, the defendant is present and represented by counsel, as here, are not rare. If the stenographer had not taken notes of the defendant's statement, we may suppose that no one would seriously contend that the trial judge should be compelled to tell what was said there. The circumstance of transcribing the defendant's statement in chambers is not of such transcendent importance as to convert the transcription into a public record.

The Circuit Court in this case had pending the defendant's motion for a new trial upon stated grounds. I do not construe the law to be that in granting a motion the court is obliged to state its reasons. It had been indicated during the argument that the defendant, who had been convicted in one

case and his punishment fixed at death, might withdraw his pleas of not guilty and plead guilty in both cases. If such a plea was to be made, it would have to be in person and in open court. Sec. 173, Criminal Code of Practice. This occurrence in chambers was but a preliminary thereto.

Should the judge in this case have declined to hear the defendant in the presence of counsel for both parties? Whether he should or not is now beside the question. He did not decline, and promised the defendant that newspaper reporters would not be present. Doubtless, the defendant believed that they would not be given access to his statement. Should the judge be now required by this court to break faith with the defendant? Should he not be allowed to keep the confidence? It seems to me that it would be unconscionable all around and against the principle of good faith and the sound administration of justice to require the judge to breach the confidence. Above all else, assurance and confidence in the integrity of a judge are paramount.

The eminent authority, Wigmore on Evidence, Volume 8, Sec. 2376, after pointing out that communications by an informer with a judge are not privileged, adds:

"But is there not a distinct principle, by which communications in the nature of *confessions,* or similar confidences, made privately and not in open court, by parties who are implicated in a wrong or crime and desire guidance for their course of action, are privileged from disclosure by him, at his option? No obstruction to the course of justice can be apprehended by allowing such confidences to be preserved. The necessity and propriety, for the administration of justice, of assuring official confidence to informants desiring to unburden themselves is even plainer when a judge is the repository of that confidence, than in the case of prosecuting officials. The judge is indeed the most appropriate person to represent the Law's confessor.

"The limits of the principle may be thus phrased:

"A judge of any court, who as such receives information upon a matter criminal or civil, from a person, whether party or not, confessing his own offence or liability, is privileged to withhold testimony to such information, if received in confidence, when called as a witness in any proceeding not tried before himself. Whether a judge should in a given case with propriety receive such information at all, or receive it with a pledge of confidence, is a matter of judicial ethics; but when once received, the privilege applies."

I feel strongly that this was a matter to be determined by the judge in his discretion. Mandamus does not lie to control the exercise of a trial court's discretion. Moreover, this court's power under Section 110 of the Constitution authorizing it to control courts of inferior jurisdiction, it has been often said, will be exercised only to prevent injustice. The reduction of the penalty from death to life imprisonment can hardly be called an injustice to the defendant.

For these reasons I concur in the conclusion of the majority of the court to the effect that the petitioning newspapers are not entitled to the information sought.

STEWART, Judge.

I dissent from the majority opinion.

The petition discloses this proceeding grew out of a notorious double murder of Herman Tarbis and Sophia Tarbis, his wife, which occurred in the City of Louisville on New Year's Eve in 1957. William Floyd Owen was indicted for these murders. A trial of one of the indictments in May of 1958 in the Jefferson Circuit Court, Criminal Branch, Second Division, over which the Honorable L. R. Curtis presides as judge, resulted in a conviction, and the death penalty was given. A motion for a new trial was seasonably filed by Owen, which was continued from time

to time by agreement of counsel until January 12, 1959. When the motion was called, Owen indicated he would make a statement or confession relative to the double murder and enter pleas of guilty to each indictment but, before doing so, he requested Judge Curtis to hear him in chambers out of the presence of the jury and the newspaper reporters. Owen's request in this respect was complied with.

Thereupon, Judge Curtis, Owen, counsel for both the Commonwealth and the accused, accompanied by James M. Yoder, the official court reporter, retired from the court room to Judge Curtis' chambers. Owen then made a statement, which was taken down by Yoder. Shortly thereafter, Owen, Judge Curtis, counsel on both sides and Yoder returned to the court room where a jury was empaneled. Assistant Commonwealth's attorney, Laurence E. Higgins, then informed the jury that Owen had confessed and had changed his pleas of not guilty to guilty to both murders; and, upon the recommendation of Higgins, the jury in each case fixed the punishment of Owen at life imprisonment. While the record before us does not reveal when Judge Curtis sustained Owen's motion for a new trial on his first conviction, it was bound to have been after Owen made the statement in chambers and before the juries fixed his punishment on his pleas of guilty.

John H. Amon, a reporter for petitioner, Courier-Journal & Louisville Times Company, stated in his affidavit in the present action that when Judge Curtis notified the representatives of the newspapers they were excluded from his chambers, he told them in the presence of Owen and counsel on both sides that any statement Owen might make would be a matter of public record and would be available to the press. After the motion for a new trial had been sustained and after Owen had pleaded guilty and received a life sentence from each jury, Amon said Judge Curtis again assured him a transcript of Owen's statement would be prepared for

dissemination to the public. Later, however, according to Amon, Judge Curtis changed his mind and refused to order Yoder to make up the transcript or to allow members of the press to examine the stenographic notes of the official court reporter.

The Court's opinion does not determine whether the statement made by Owen is or is not a public record. Nevertheless, it holds that *even if* such statement is a public record, petitioner has no right to enforce inspection thereof by mandamus. The Court's opinion undertakes to buttress this holding by directing attention to this language of a very ancient common-law rule which appears in Fayette County v. Martin, 279 Ky. 387, 130 S.W.2d 838: "'* * * Every person is entitled to the inspection, either personally or by his agent, of public records, including legislative, executive and judicial records, provided he has an interest therein which is such as would enable him to maintain or defend an action for which the document or record sought can furnish evidence or necessary information.' This rule, it is said, is not so much a denial of the right of every citizen to inspect the public records and documents as a declaration of the interest which a private individual must have to avail himself of the extraordinary writ of mandamus to enforce his right.'" This quotation is extracted from 45 Am. Jur., Records and Recording Laws, § 17, pp. 427–428.

It is positively (but, in my opinion, erroneously) stated in the Court's opinion that the Martin case adopted the foregoing excerpt as the rule, in essence, applicable to the general right to inspect public records, civil or criminal, in this jurisdiction. The majority opinion also declares with equal assurance that such principle is controlling in the case at bar. This stand taken by the Court's opinion requires an examination of the Martin case.

That case was an action by Fayette County and the City of Lexington for mandamus to compel Martin, Commissioner

of Revenue of Kentucky at the time, to permit an examination of certain annual franchise tax reports. The petitioners (appellants) there claimed the common-law right to inspect the records. It was stated by the Court of Appeals that the above-quoted common-law principle was a proper statement of the common-law rule invoked by those petitioners; but it was then held that this claimed right had been *divested by a statutory enactment* (Chapter 4 of the First Extraordinary Session of the 1938 General Assembly). In other words, this Court, in effect, conceded the petitioners in the Martin case *had the required common-law interest.* This Court had no occasion to, and did not determine, what right of inspection a member of the public had who, perhaps, did not possess the common-law legal interest. Nowhere in the opinion does it expressly adopt petitioner's "claimed" common-law right as the rule in Kentucky. In short, the quotation inserted in the Martin opinion, setting forth the common-law rule as regards the right to inspect public records, was never applied to the factual issues raised because a statute prohibited the right so asserted by Fayette County. It follows the common-law rule appearing in the Martin case had no part in the decision of that case and, therefore, it must be considered obiter dictum.

Kentucky, admittedly, has neither constitutional nor statutory authority for the public inspection of judicial records, and we have shown the Martin case did not require that Kentucky bind itself to the antiquated common-law rule relied upon there. The Martin case has never before been cited as laying down the common-law rule in respect to the right to inspect public records. It is believed that the case, in substance, intended to say no more than was stated in the earlier case of Barrickman v. Lyman, 154 Ky. 630, 157 S.W. 924, 926, which is as follows:

"Some of the older cases make a distinction between an examination of public records by the public in general and an examination by those having an interest in them, holding that in the latter case the right exists, while in the former it does not. Am. and Eng.Encyclo. of Law, Vol. 24, pp. 182, 183. *It is unnecessary in this case to determine whether or not this distinction prevails in this state. It is sufficient to say that plaintiff is not only a citizen and taxpayer, but has shown an interest in the records in question."* (Emphasis ours.)

In 45 Am.Jur., Records and Recording Laws, § 18, p. 428, we have this language on the point under discussion which we believe should be considered the law of this Commonwealth, since it is the weight of authority on the right to inspect public records: "The English common-law rule that an inspection of public documents could be had by a private person only where he showed some legal interest to be subserved by the desired inspection * * * has not been generally observed in this country. It is not essential that the interest of a person desiring to inspect public documents be private and capable of sustaining a suit or defense on his own personal behalf. That common interest which every citizen has in the enforcement of the laws and ordinances of the community wherein he dwells has been held to entitle a citizen to the right to inspect the public records in order to ascertain whether the provisions of the law have been observed."

The case of Nowack v. Fuller, 243 Mich. 200, 219 N.W. 749, 751, 60 A.L.R. 1351, in commenting upon the common-law rule relied upon to deny the right of inspection in the case at bar, made this significant statement:

"This rule adopted by the English courts has no basis in reason or justice. It is absurd to hold that a man could inspect the public records, providing his purpose was to use the information in some litigation, and to

deny him the right to inspect for some other purpose that might be equally beneficial to him. It does not protect all of his substantial rights and has not been received with general favor in this country."

In the Court's opinion it is pointed out, quoting from Riley v. Lee, 88 Ky. 603, 11 S.W. 713, that the "freedom of the press" provision in the Constitution of Kentucky "was simply intended to secure to the conductors of the press the same rights and immunities that are enjoyed by the public at large." I agree petitioner has no greater right than any other member of the public to this transcript; but, if the transcript is a public record, which I will subsequently show it is, then any member of the public is entitled to get a copy of it from the court reporter by paying his customary fee. See New York Post Corp. v. Leibowitz, 2 N.Y.2d 677, 163 N.Y.S.2d 409, 143 N.E.2d 256, 262.

This writer takes the view that newspapers have a legitimate interest in judicial or public records entitling them to a reasonable inspection of such records, though no legal interest, as such, would be thereby subserved. The case of Nowack v. Fuller, cited above, also offers a novel idea that may merit consideration, though it smacks against Riley v. Lee, cited above. That case proposes that, if it is believed one must have a "special" interest not possessed by citizens generally to be entitled to the remedy of mandamus, why does not a newspaper, in the business of publishing material of public interest, have such a special interest?

In Fayette County v. Martin, cited above, the petitioner there sought to gain access to franchise tax reports. The case at bar deals with the heinous murder of a respected man and his wife, which aroused deep interest in the manner in which this case was disposed of in the Jefferson Circuit Court. Why was a previous death sentence meted out to Owen set aside? This fact can only be brought to light by the statement which was taken down by the official court reporter in Judge Curtis' chambers.

In Cowley v. Pulsifer, 137 Mass. 392, 394, 50 Am.Rep. 318, a leading case that points up the importance of full disclosure in criminal proceedings, Oliver Wendell Holmes, then a judge of the Supreme Court of Massachusetts, wrote the opinion for that court and first quoted this language from the English case of Rex v. Wright, 8 T.R. 293, 298:

"'Though the publication of such (judicial) proceedings may be to the disadvantage of the particular individual concerned, yet it is of vast importance to the public that the proceedings of courts of justice should be universally known. The general advantage of the country in having these proceedings made public, more than counterbalances the inconveniences to private persons whose conduct may be the subject of such proceedings.'"

This jurist then, in his own language, continued:

"The chief advantage to the country which we can discern, and that which we understand to be intended by the the foregoing passage, is the security which publicity gives for the proper administration of justice * * *. It is desirable that the trial of causes should take place under the public eye, not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed."

These principles were generally approved in Paducah Newspapers v. Bratcher, 274 Ky. 220, 118 S.W.2d 178. See also dissent of Froessel, J., United Press Associa-

tions v. Valente, 308 N.Y. 71, 123 N.E.2d 777, 787.

The case of Jackson v. Mobley, 157 Ala. 408, 47 So. 590, 592–593, had this to say on the policy of keeping all judicial steps taken in a criminal trial out in the broad daylight:

> " * * * In criminal cases, after arrest, it is not conceivable that the broad policy for openness and publicity of all judicial acts and processes relating to the prosecution, by the court itself or by public officers charged with duties thereunto, should suffer qualification in any respect, however preliminary, or in nature ex parte, the steps taken or action had may be. * * * Unless some wholesome reason exists to require secrecy, to the end that the court's function may not be defeated by publicity, no such dangerous qualification of the general policy of the open course of justice should, as administered through our courts, be sanctioned."

Are the stenographic notes Yoder made in the circuit judge's chambers of Owen's statement a public record? The proceedings before this Court do not show upon what grounds Owen relied in his motion for a new trial. If one of the grounds was newly discovered evidence, and was supported by the affidavit of Owen in the manner required by law, then Judge Curtis was justified in hearing what Owen had to say, as the Legislature has left the procedure in such instances to be regulated by the courts. When Judge Curtis heard Owen's statement in chambers, it was but a part of the proceedings in court to determine whether or not he would grant Owen a new trial, just the same as if he had heard Owen's testimony in the court room. It is not unusual in the trial of both civil and criminal cases for counsel and the judge, accompanied by the reporter, to retire to chambers where testimony is heard outside the presence of the jury and reported for the benefit of the record.

I believe the statement Owen made in chambers, in the hearing upon the motion for a new trial, and upon which the judge evidently granted him a new trial, was a part of the court record. Therefore, it became a public record, and any member of the public who might desire it is entitled to a transcript thereof.

Another reason why this statement of Owen should be considered a public record is that KRS 28.410 provides that each circuit judge may appoint an official reporter for his court. By KRS 28.420, the reporter is required to take an oath of office. Under KRS 28.430, if the presiding judge is of the opinion that the testimony in any proceeding should be preserved, he shall direct the reporter to take full notes of the proceeding; and in all criminal proceedings, upon motion of either party, the court shall order the reporter to make in duplicate a full transcription of his notes. If an appeal is later taken from the judgment entered in the circuit court, the original transcript shall be filed among the papers to be used in making up the bill of exceptions for the Court of Appeals and the duplicate shall be filed with the papers and remain in the office of the clerk of the court as a public record. The reporter's salary is fixed in KRS 28.450. In view of what has been said the official court reporter is a public officer (it was so held in Love v. Duncan, Ky., 256 S.W. 2d 498), and his notes of a proceeding when transcribed become a public record.

Among other things it is provided in Section 11 of the Constitution of Kentucky that in all criminal prosecutions an accused shall have a public trial. This salutary provision does not mean that the presiding judge may not limit the number of spectators in the court room to prevent overcrowding, or that he may not exclude children from hearing a trial of a salacious nature. It does mean, however, that he may not exclude members of the press. The press is there as a representative of the public. If, as representatives of the public, newspaper re-

porters have the right to attend the trial, they likewise have the right to obtain a copy of the court reporter's transcript of the proceedings, at their own expense, when they make a reasonable request therefor, and when the reporter or the court will not be hindered or hampered by such request.

I am not unmindful of the good motives which actuated Judge Curtis to think that what Owen said to him was of a confidential nature and to conclude that he could not in good conscience have the court reporter transcribe Owen's statement. I seriously doubt, however, that in any criminal prosecution a trial judge may permit the accused to make during the trial, or at any time during a hearing on a motion, a confidential statement to him bearing on his guilt or innocence which does not become a part of the court record. Respondents rely upon 8 Wigmore (3rd Ed.) § 2376, p. 759, as sustaining their position that Owen's statement was confidential and privileged. This text does not support their position, because the statement Judge Curtis heard was in a proceeding then pending before him, while Wigmore deals with statements made to a judge in confidence before the person making the same was charged with a crime. Wigmore in a footnote in his text on this point says, "The precedents are few," and then cites Lindsey v. People, 66 Colo. 343, 118 P. 531, 16 A.L.R. 1250, and Pierson v. Steortz, 1 Morris, Iowa, 136. An examination of these authorities plainly indicates they have no relation to the question raised here.

If a trial judge is permitted to hold as confidential a statement by an accused bearing on his guilt or innocence made during the trial, or made during the hearing on his motion for a new trial, and then may refuse to have his court reporter transcribe and furnish to the press such statement, we are but a step from "Star Chamber" proceedings in a free country where our Constitution provides the accused shall have a public trial. Admittedly, this constitutional provision is for the benefit of the accused and not for that of newspaper reporters, yet if a court may decline to make public court proceedings at the request of the accused, there is nothing to prevent his doing so at the prosecutor's request or on the judge's own volition. Thus, what was intended by the framers of our Constitution as a benefit to the accused may be used to his great disadvantage. It seems to me a system could evolve whereby the general public could be excluded from knowledge of what transpires at any or all criminal trials.

I would grant the writ of mandamus directing Judge Curtis to order Yoder to make a transcript of his notes taken on the hearing in chambers and thereafter furnish the transcript to petitioner upon the payment of Yoder's fee.

MOREMEN, J., joins with me in this dissent.