282 So.2d 266

**STATE of Alabama on the relation of
Charles KERNELLS**

**v.**

**Mark EZELL, Individually and as Probate
Judge of Choctaw County, Alabama, and
Juanita Wheeler, Intervenor.**

**SC 462.**

Supreme Court of Alabama.

Sept. 6, 1973.

Irvin J. Langford, and John L. Lawler,
Mobile, for appellant.

William L. Utsey, and W. H. Lindsey,
III, Butler, for appellee.

BLOODWORTH, Justice.

This is an appeal from an order and judgment of the Circuit Court of Choctaw County, Alabama, granting appellees' motion to dismiss appellant's amended petition for writ of mandamus, which sought to compel appellee as Probate Judge of Choctaw County, to allow appellant, a citizen and taxpayer of that county, to inspect a petition for a local option liquor referendum for Choctaw County.

The single assignment of error charges that the court erred in dismissing appellant's amended petition for writ of mandamus. The basic issue before us on this appeal is whether appellant was entitled to inspect the petition or whether the probate judge was correct in denying such request. This court has concluded that appellant is entitled to such inspection, and that the judge of the court below was in error in granting the appellee's motion to dismiss the appellant's amended petition for writ of mandamus.

It appears from the petiton, as amended, that appellant is over the age of twenty-one years, a bona fide resident citizen and a duly qualified elector and voter of Choctaw County, Alabama, as is the appellee, who is the probate judge of that county. The petition further alleges that on June 13, 1973, there was filed in the probate court a petition for a local option liquor referendum for Choctaw County, under an act [Act No. 1266, Acts of the Legislature 1971, Vol. III, p. 2195] which requires that a referendum be held provided 25% of the registered voters of the county sign a petition, which is then filed with the probate judge. It is further averred that the appellant on the 26th day of June, 1973, did present himself at the office of the appellee probate judge and did present a written request, as chairman of a committee called "Concerned Citizens for Truth of Choctaw County," that he be permitted to examine the petition requesting the referendum. Said written request was denied in writing by the probate judge. It is further averred that appellant requested examination of the petition for the referendum in order to determine if it contained the names of sufficient qualified voters and that he made known his purpose to the appellee probate judge. The petition concludes that the act of the probate judge in refusing permission to examine the petition, which is a public record, is improper, erroneous, without just cause and without any legal right on the part of the probate judge to refuse to allow appellant to examine the petition. The petition prays for an alternative writ of mandamus or rule nisi ordering and commanding the probate judge to forthwith allow appellant to inspect the petition. Pursuant to the prayer of the petition, the circuit judge entered an order directing the clerk to issue the alternative writ of mandamus returnable July 10, 1973. After a hearing on July 10, 1973, the circuit judge discharged the alternative writ of mandamus

and granted the motion to dismiss the petition for writ of mandamus, taxing the costs against the appellant. This appeal then followed.

It is the appellant's contention that the following code section (Title 41, § 145) gives him the right to inspect the petition in this cause, viz:

"Every citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute."

There is no statute of which we have been apprised, by brief or our research, expressly providing otherwise; thus, it would clearly appear that this statute will allow the inspection of the petition by appellant.

This conclusion is strengthened by the decision of this court in Scott v. Culpepper, 220 Ala. 393, 125 So. 643 (1930). There, the question was presented as to the right of a citizen of Cullman County to obtain a certified copy of a death certificate entered in the record books of the local register of precinct number one of that county. This court held that the death certificate, a copy of which was demanded, had been filed with the local registrar and was entered in his record book. Since the local registrar was at that time the custodian, and since it could not be doubted that such record did constitute a "public writing" within the influence of then Section 2695 [now Title 41, Section 145, Code of Alabama of 1940, as recompiled 1958], this "public writing" was held to be subject to inspection by any citizen and a certified copy due to be given him upon demand and payment of the legal fee therefor. The code section and this case would seem to be ample authority for concluding that in the instant case appellant has the right to examine the instant petition.

Moreover, the following code section appears at Title 13, § 292, Code of Alabama 1940, as recompiled 1958, in a chapter dealing with probate courts, viz:

"The records of the office must be free for the examination of all persons, when not in use by the judge, whether such persons are interested in such records or not.'"

It would appear to be the public policy of the State of Alabama, as reflected by this section, that all of the records of the office of the probate judge must be free for examination of all persons, whether interested in the same or not. Whether the petition in the instant case is included within the term "records," we need not decide. For, there are other sections of the code dealing with the duties of the probate judge which would seem to indicate the public policy of the state is to give access to "books" and "papers" as well as "records."

Title 13, § 280 reads, in part, as follows:

"It is the duty of the judge of probate:

" * * *

"3. To keep all the books, papers, and records belonging to his office with care and security; the papers arranged, filed and labeled, so as to be of easy reference; and the books and records lettered, and kept with general, direct and reverse indexes; but, without the authority of the court of county commissioners, he must not make new indexes.

" * * *

"7. On application of any person, and the payment or tender of the lawful fees, to give transcripts of any paper or record required to be kept in his office, properly certified."

Though we have not found, nor has there been cited to us, a case in Alabama dealing with the question as to whether one should be permitted to inspect a petition for a liquor referendum, this precise question was before the Supreme Court of Montana in State ex rel. Halloran v. McGrath, 104 Mont. 490, 67 P.2d 838 (1937).

There, an elector was held entitled to inspect petitions for a liquor referendum while in possession of the county clerk and recorder, regardless as to whether such petitions constituted public records or not, in view of a statute authorizing inspection of public records and other matters in the office of any officer. The Montana Code section with which the court there dealt is identical to our Title 41, Section 145, supra. The Montana Supreme Court issued the pre-emptory writ of mandamus prayed for upholding the right of the citizen in that case to inspect the petitions for the referendum.

In the instant case, it seems clear that the appellant is entitled to inspect this "public writing" in the hands of the probate judge, namely, the referendum petition, and that the trial court was in error in sustaining the motion to dismiss the petition for mandamus and in discharging the alternative writ under the allegations as disclosed by the petition.

Appellant has shown " * * * a clear right to demand the performance of a legal duty by one who is so required to perform such act", as authority well established in this state requires to be done before one is entitled to mandamus. Holcombe v. State, 240 Ala. 590, 200 So. 739 (1941).

There is no merit in appellee's contention that to allow the appellant " * * * to see the petition would be the same as allowing him to see a person's vote," citing State ex rel. Daily Gazette Company, et al. v. Bailey, et al, 152 W.Va. 521, 164 S.E.2d 414 (1968). In that case, certificates of nomination to place the names of candidates for president and vice president on the election ballot, pursuant to the West Virginia code, were held not to constitute public records. It was further held that a qualified voter who signs the certificate in accordance with the provisions of the code effectively casts his vote for the nomination of the candidates· named therein, and thus, his vote is entitled to the same secrecy as one cast in a primary election. We think that holding is inapposite in the instant case. Even in its opinion, the West Virginia Supreme Court of Appeals differentiated that case from cases such as the case at bar:

"These signers were not making a supplication or request to a superior or to a group in authority, as in the connotation of a petition. They were affirmatively making a nomination, which, if done in accordance with the appropriate statute, would succeed in placing their candidate on the ballot in the general election."

Appellees also argue that, to allow "the general public to see such a petition would subject the person signing such to embarrassment, intimidation, and harassment by overzealous opponents of the legal sale of liquor, * * *."

Such contention is answered in a decision of this court in Excise Commission of Citronelle v. State, ex rel. Skinner, 179 Ala. 654, 60 So. 812 (1912). In that case, Mr. Justice Somerville writing for the court held, viz:

"In the present case, however, whatever personal embarrassments might result from the disclosure of the names of those who have signed this recommendation must be regarded as matters of private interest; and, although they might become, in some sense, matters of public concern, even so, they are wholly subordinate to that paramount public interest —the maintenance and enforcement of public law. Our conclusions are supported by high authority."

Finally, appellee suggests in brief:

"Also, I believe the Court can take judicial notice of the results of the election which was that the voters of the county voted in favor of the legal sale of liquor.

"This means that the purpose of Appellant in wanting to inspect the petition is now moot, as a majority of those vot-

ing favored the legal sale of liquor. * * *"

We cannot agree with appellee's assertion. We have not been able to find an Alabama case directly on point nor has any been cited to us. However, in view of the requirement that the election be held "not less than thirty days, nor more than forty-five days" [Title 29, § 68] of the filing of the petition, "mootness" would always be assured before the usual appellate process is completed. We think this supplies good reason to hold that this case has not been rendered moot by the holding of the election, if in fact it has been held.

In its most recent discussion of "mootness" the United States Supreme Court stated in Roe v. Wade, 410 U.S. 113, 93 S. Ct. 705, 35 L.Ed.2d 147 (1973):

> "But when, as here, pregnancy is a significant fact in the litigation, the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete. If that termination makes a case moot, pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied. Our law should not be that rigid. Pregnancy often comes more than once to the same woman, and in the general population, if man is to survive, it will always be with us. Pregnancy provides a classic justification for a conclusion of nonmootness. It truly could be 'capable of repetition, yet evading review.' Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). See Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969); Carroll v. President and Commissioners, 393 U.S. 175, 178–179, 89 S.Ct. 347, 350, 351, 21 L.Ed.2d 325 (1968); United States v. W. T. Grant Co., 345 U.S. 629, 632–633, 73 S. Ct. 894, 897–898, 97 L.Ed. 1303 (1953)."

Additionally, this exception for cases "capable of repetition, yet evading review" has been specifically applied by the United States Supreme Court to the elections context in Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969) where a challenged nominating procedure was dealt with on the merits even after the election because of the likelihood of its being used in future elections.

This exception is properly applicable to the case at bar. The short 30–45 day time period between filing and election, coupled with the possibility of future elections in other counties, convinces us that if the rights of appellant, and those similarly situated, are to be afforded the protection they deserve, the occurrence of the election should not be permitted to effectively deny all review by this court. The cause, therefore, is not moot.

It is thus that we must conclude that the court below erroneously dismissed the petition, and the judgment herein must be reversed and the cause remanded to be proceeded with in accordance with the views herein expressed.

Reversed and remanded.

HEFLIN, C. J., and COLEMAN, McCALL and JONES, JJ., concur.