[L. A. No. 14510. In Bank.—April 19, 1934.]

ETTA RITTERSBACHER, Appellant, v. BOARD OF SUPERVISORS OF LOS ANGELES COUNTY et al., Respondents.

538

Daniel E. Farr and W. Torrence Stockman for Appellant.

Everett W. Mattoon, County Counsel, and Gordon Boller, Deputy County Counsel, for Respondents.

SHENK, J.—The plaintiff above named is the owner of unimproved lot No. 22 in block 15, tract No. 8235, in Los Angeles County. By her petition filed in the superior court she sought a writ of mandate to compel the defendants, board of supervisors, county auditor, county tax collector and county counsel to order and consent to the cancellation of the assessment for general county purposes levied against said lot by the county assessor for the year 1933. On July 17, 1933, through her agent, she filed with the board of supervisors, sitting as a board of equalization, her petition to have the valuation placed upon said property by the assessor reduced from $640 to $385. After a hearing her petition was denied on July 26, 1933. On September 19, 1933, she commenced this proceeding in the superior court to obtain the cancellation of said assessment "or such portion thereof as the court finds to be erroneous".

Through the same agent eight other owners of real property, some of which was improved and some unimproved, filed separate petitions with said board of equalization to have the assessments on their several properties reduced to designated sums. These petitions were denied and the petitioners therein filed similar petitions in *mandamus* to compel the cancellation of said assessments, "or such portions thereof as the court finds to be erroneous". To each petition for the writ a general demurrer was filed. Pursuant to a stipulation of the parties and an order of court all nine

causes were consolidated and thereafter treated as one proceeding. The demurrers were sustained without leave to amend and a judgment of dismissal entered, whereupon an appeal was taken both from the order sustaining the demurrers and from the judgment of dismissal. The appeal from the order, which is nonappealable, is dismissed.

On the appeal from the judgment it is contended that the petition for the writ of *mandamus*, together with the exhibits attached thereto, shows that the uncontradicted evidence before the board of equalization, at the time the petitions for equalization were denied, proved that the assessor had wilfully adopted and deliberately pursued an erroneous and discriminatory and inequitable method of assessing different classes of property which resulted in excessively inequitable valuations of the property of the plaintiffs, and therefore that the peremptory writ should have been granted. In this connection it is claimed that the uncontradicted evidence before the board at the time the petitions for equalization were denied was that the assessor adopted a lower percentage in assessing certain classes of personal property than that applied to real estate and improvements, to the unlawful prejudice of and discrimination against the latter. That evidence, as produced by the agent of the several petitioners, was to the effect that, in passing the property in the county ''in proportion to its value to be ascertained as provided by law'', as required by the Constitution (art. XIII, sec. 1), and by sections 3617 and 3627 of the Political Code, the assessor adopted fifty per cent of the value of real property and fifty per cent of the depreciated value of improvements thereon as the value of said property for the purpose of assessment; that in assessing merchandise the assessor adopted forty per cent of the ''cost or market value, whichever is lower''; that forty per cent was applied to stocks of new automobiles, thirty per cent to fleets of automobiles in use, thirty per cent to store fixtures, forty per cent to office furniture and fixtures, thirty per cent to machinery and equipment and thirty per cent to used automobiles. After this evidence was produced by the petitioners the assessor requested and was accorded the right to reply at a later date. This reply was filed with the board, but not until after the board had denied the petitions. Therefore the plaintiffs herein contend that the defendants are bound,

on the subsequent proceeding for a cancellation of the assessments pursuant to section 3804a of the Political Code, by the showing of the alleged uncontradicted facts made to the board at the time of or prior to the orders of denial of the petitions to equalize. But this is not so. The petitions filed with the board alleged an overvaluation of the described real estate and improvements and nothing more, and the prayer was for an equalization of the value. "To equalize is to make equal, to cause to correspond, or be like in amount or degree, as compared with something." (*Wells Fargo & Co.* v. *State Board of Equalization,* 56 Cal. 194, 196.) What the petitioners before the board were entitled to was that their property be placed "on the same basis of valuation as that applied to other property of like character and similarly situated". (*Birch* v. *County of Orange,* 186 Cal. 736 [200 Pac. 647, 649] ; *Los Angeles etc. Co.* v. *County of Los Angeles,* 162 Cal. 164, 166 [121 Pac. 384, 9 A. L. R. 1277].) On the hearing on this issue the assessor's office reported to the board, in effect, that there was no disparity between the assessment on the properties of the petitioners and that placed on like property similarly situated, and there was no showing to the contrary on that issue.

█ As above indicated, the petitions for equalization filed with the board made no reference whatever to the claim of the petitioners that their properties were assessed on an unlawfully discriminatory basis. The petitioners failed then to advise the board of "the facts upon which it is claimed such reduction should be made", as required by section 3674 of the Political Code. While mere informalities in the presentation of a petition for equalization should receive a liberal indulgence, nevertheless the above requirement of said section 3674 serves a necessary purpose and should be complied with in order that the board may know, or have some reasonable means of ascertaining, what the claims of the petitioners are, to the end that such claims may be investigated by the assessing authorities prior to the hearing. The proof offered by the petitioners at the hearing might well have taken the assessor by surprise as being entirely without the scope of the inquiry presented by the petitions, and this may account for the fact that the assessor requested time to make a reply to the attempted showing of illegality of the assessments. █ In this connection it must be noted that the

claims of the petitioners on the hearing, if supported to their full import, would invalidate the entire assessment-roll of the county, or would require the board to raise or lower the entire assessment-roll, a power not possessed by the board under section 3673 of the Political Code. We therefore conclude that the petitions for equalization as filed with the board were properly denied.

We have discussed the foregoing points because they are elaborately argued in the briefs; but a determination thereof is not determinative of this appeal.     ■     The real question is whether the petitions in *mandamus* state facts entitling the plaintiffs to any relief; and this question must be determined on the facts existing at the time the petitions for the writs were filed as disclosed by the allegations thereof.     ■
It may be assumed that the denial of the petitions for equalization would not foreclose the petitioners from later presenting and pursuing their remand for a cancellation of the assessments pursuant to section 3804a of the Political Code. That section would seem to be available in the absence of any previous petition to the board of equalization. Its obvious purpose is to afford relief to a taxpayer whose property is assessed "more than once, or erroneously or illegally" assessed. This section was applied and given effect in *Central Mfg. Dist.* v. *State Board of Equalization,* 214 Cal. 288 [5 Pac. (2d) 424], wherein it appeared that to refuse the relief prayed for would result in an assessment of the property "more than once" and result in double taxation. But that is not this case. Here the plaintiffs concede that their properties are subject to assessment and taxation, and no question of double taxation is involved. If their prayer for the cancellation of each assessment in its entirety be granted, their properties will escape taxation for the year in question. Also, to grant the relief in so far as the cancellation of "such portion as the court finds to be erroneous, illegal and void", is sought, would presuppose that under said section 3804a the defendants herein could order and consent to the segregation of the alleged illegal portion from that which the plaintiffs properly should pay. The assessments in each case are in a lump sum and said section 3804a contains no provision for segregation in the manner proposed.

When the question of the cancellation of the entire amount as illegal is considered, we turn to the allegations of the

petitions and the exhibits attached thereto. The petitions allege the percentages adopted by the assessor as to real estate and improvements, and the different percentages adopted in the assessment of the certain classes of personal property above noted and as shown before the board of equalization, and the consequent alleged unlawful discrimination and illegality of the assessments. ■ Attached to the petitions and made a part thereof is a copy of the statement and report of the assessor made to the board of equalization in connection with the petitions to equalize. This report may properly be considered as a part of the case made by the petitioners herein. It would seem to make no difference whether the matter in justification of the action of the defendants appears as a part of the petition itself or as a part of the return to the alternative writ, as occurred in *Bank of Italy* v. *Johnson,* 200 Cal. 1, 28 [251 Pac. 784]. In either event the showing made at the time of the return to the alternative writ would govern notwithstanding an adequate showing of justification for the acts of the defendants be not earlier made. Such justification may appear from the facts presented by the petitions, and the demurrer is a sufficient return.

■ If the plaintiffs were to prevail in this consolidated proceeding the result would be to invalidate practically the entire assessment-roll of Los Angeles County for the year 1933. Such a result may not lightly be contemplated and should not be adjudged except upon a clear showing of "fraud or something equivalent of fraud" on the part of the assessing authorities such as appearing in *Mahoney* v. *City of San Diego,* 198 Cal. 388 [245 Pac. 189], and *Southern Pac. Land Co.* v. *San Diego County,* 183 Cal. 543 [191 Pac. 931]. ■ No actual fraud or improper motives on the part of the assessing authorities is charged or intimated. If the plaintiffs are to succeed they must make a showing of action on the part of the assessor such as would constitute an arbitrary and wilful disregard of the law intended for his guidance and be a constructive fraud upon them. (*Los Angeles etc. Co.* v. *County of Los Angeles,* 162 Cal. 164 [121 Pac. 384, 9 A. L. R. 1277]; *Birch* v. *County of Orange,* 186 Cal. 736 [200 Pac. 647]; *Hammond L. Co.* v. *County of Los Angeles,* 104 Cal. App. 235 [285 Pac. 896].) The allegations of the petition are not in themselves suffi-

cient if there is attached to and made a part of the petitions documentary evidence which would counteract and destroy the effect of the allegations.

This brings us to a consideration of the lengthy written report of the assessor made to the board of equalization and made a part of the petition. This report shows that there are in Los Angeles County the following: In excess of 1,217,000 parcels of real estate, comprising every type of this class of property on which a valuation must be placed; in excess of 1,150,000 structures of every conceivable nature subject to assessment; in excess of 80,000 dealers in all kinds of tangible personal property upon which valuations must be placed; about 800,000 motor vehicles subject to assessment; and in excess of 1,000,000 taxpayers owning all the types, kinds and classes of other personal property which it is necessary to appraise. All of this property must be appraised and assessed within the limited time between the first Monday in March and the first Monday in July of the same year. To accomplish his task the assessor has about 600 field deputies to assist him. Obviously the enormous extent of the task can afford no justification for an illegal tax. These figures were presented by the assessor merely to demonstrate that it is necessary that he promulgate certain general rules and formulas of percentages of depreciation for general use in order to secure uniformity in valuation as required by law.

In his statement the assessor sets forth the standards set up, the methods applied and the procedure followed by him in arriving at the value of real property and improvements thereon within his jurisdiction. The methods adopted and rules applied in assessing this class of property are not seriously questioned. In arriving at the value of all property for the purposes of assessment the assessor is guided generally by section 3617 of the Political Code which defines the term "value" as "the amount at which the property would be taken in payment of a just debt from a solvent debtor". This value is expressed in section 3627 of the Political Code as the "full cash value" for purposes of assessment. It is the assessor's recognized duty to see that the valuation placed on the various kinds of property shall be in proportion to the worth of such properties. If it is proportional and all are treated alike, no

one contends that the taxpayers must be charged a full hundred per cent, for such is not required by the law. It is also recognized that the assessment on personal property shall be on a basis which is fair to the owners of real property so that neither shall suffer to the advantage of the other.

In dealing with the assessment of personal property the assessor is confronted with a difficult problem. In an endeavor to solve it he recognizes two general classes, viz.: "Business personal property" and "personal property". The former refers to that class of personal property owned and used in manufacture, commerce and trade and the latter to that class of personal property which represents the personal belongings of individuals, usually in their homes. With reference to a stock in trade it is obviously impracticable if not impossible to take an inventory and evaluate each article. The inventories of stocks of merchandise reflected on the books of the company are taken as indicative of their worth. This inventory is discounted twenty per cent and then fifty per cent is applied for assessment purposes. It is not pointed out by the plaintiffs, nor does it appear how or in what manner the discount so applied is as a matter of law unreasonable or unlawful. Conceding that twenty per cent is an arbitrary figure, some discount would appear to be necessary and proper. Depreciation in value of merchandise which has remained upon the shelves must take place, as surely as depreciation of structures. Formerly the same percentage of depreciation was applied to machinery and equipment. But in recent years the replacement cost, which is deemed an important factor, has been found to decline steadily, the percentage of depreciation has been increased accordingly, and the fifty per cent of the value less this depreciation has been applied for assessment purposes. A dealer's inventory of new automobiles has been discounted twenty per cent and the remainder assessed on a basis of fifty per cent. Used automobiles, both in the hands of dealers and in use, are depreciated forty per cent on a basis of the cost price and the year of manufacture. This is likewise more or less arbitrary, but it must necessarily be so in order to attain a proper degree of uniformity. Office furniture and fixtures are depreciated forty per cent and the depreciated value assessed on a basis of fifty per cent.

The schedule of depreciation applied to the various kinds of personal property appears in the instructions given to the deputy assessors and the depreciated value in all cases is assessed on a basis of fifty per cent. The plaintiffs apparently endeavored to show before the board of equalization and now insist that the various kinds of personal property were assessed on a different basis. The allegations of their complaints are subject to that construction, but when the exhibits are taken into consideration it becomes apparent that the basis of their complaint rests upon the different percentages of depreciation applied to the various classes of personal property. If the percentages of deduction for depreciation are not out of line there can be no room for the claim that the valuations thus fixed are not assessed on the same uniform basis as applied to real estate and improvements. In the determination of the depreciation to be allowed the assessor is vested with a large measure of discretion. The percentages here shown to have been applied may or may not have been too liberal in favor of the taxpayer, but in order that the entire assessment-roll be adjudged invalid it must be declared that the depreciated value applied by the assessor was not as matter of law "an amount at which the property would be taken in payment of a just debt from a solvent debtor", as provided in section 3627 of the Political Code, and further that the rules prescribed and methods pursued by the assessor were so unlawful, discriminatory and inequitable as to constitute a constructive fraud on the owners of real estate. We are not justified in so declaring, and conclude that the demurrers were properly sustained. The judgment in the consolidated action is accordingly affirmed.

Thompson, J., Curtis, J., Langdon, J., Preston, J., and Waste, C. J., concurred.

Rehearing denied.