STATE OF MISSOURI at the relation of LESLIE J. EGGERS, Relator, v. DWIGHT H. BROWN, Secretary of State; V. H. STEWARD, Commissioner of Motor Vehicles; and WILLIAM E. DEXTER, Deputy Commissioner of Motor Vehicles.—134 S. W. (2d) 28.

Court en Banc, December 5, 1939.

J. *Raymond Dyer* for relator.

*Justus R. Moll* and *Jno. D. Taylor* for respondents.

CLARK, J.—This is an original proceeding by mandamus. Respondents are Dwight H. Brown, Secretary of State, V. H. Steward,

Commissioner of Motor Vehicles, and William E. Dexter, Deputy Commissioner in charge of the branch office at St. Louis. Eggers, the relator, is in the business of publishing and selling lists of the registration of motor vehicles and claims that he has a right to inspect certain records in said branch office and that respondents have denied him that right. Our alternative writ was issued, return made thereto, further pleadings filed by both sides, Honorable W. B. Whitlow appointed by us as special commissioner to take testimony, his report filed in which he recommends that the alternative writ be quashed, and exceptions to said report have been filed by relator.

Respondents have filed motions asking us to strike from the files relator's brief and abstract of the record for failure to comply with our rules. A strict compliance with the rules would authorize us to sustain both motions. Rule 15 provides that the brief shall contain ''a fair and concise statement of the facts of the case without reiteration, statements of law, or argument.'' The so-called statement in relator's brief consists of thirty single spaced pages almost entirely devoted to argument. In his abstract relator has emphasized portions of the testimony by printing the same in blacker type, and has interspersed argumentative comments which it is apparent were not made during the taking of the testimony. We do not approve such conduct, but, as relator has filed in this court printed corrections of the record, we will not sustain the motions to strike. However, this should not be regarded as a precedent for future violation of our rules.

Relator, on December 22, 1937, gave notice to respondents that he would make application for a writ of mandamus on December 29, 1937. On the latter date relator filed his petition and submitted a proposed form for the alternative writ. On motion of respondents, portions of the proposed writ were stricken out and, as modified, the writ was issued. In substance, the writ stated relator's claims as follows: the nature of relator's business; the official character of respondents; that it is the practice of respondents, under the requirements of the statutes, to make up lists of motor vehicle licenses; that since 1932, for office convenience and other purposes, these lists are made in multiple copies on ditto machines; that these lists, called ''ditto lists,'' are public records which relator has a right to inspect and copy; that relator has requested the privilege of inspection and respondents refuse to permit such inspection except upon payment of cash for the privilege; that relator has no adequate remedy at law. Then the writ commands the respondents to grant relator the privilege of inspection or to show cause for refusal, etc.

Respondents' return, after portions thereof were stricken out on motion of relator, alleged in substance that: the official character of respondents was admitted; that in May and June, 1937, relator did demand the right to inspect and copy certain papers and records in

the branch office at St. Louis which demand was not granted on the ground that the records of such branch office are not official records, citing and quoting from Sections 7760 and 7772, Revised Statutes Missouri 1929 (Mo. Stat. Ann., pp. 5181-5192); that the discussion between relator and respondents was resumed in December, 1937, and on the 27th of that month respondent Brown, although still claiming that said branch records are unofficial, granted relator the right to inspect and copy said records and so notified relator's attorney; that at the same time respondent Brown instructed respondent Dexter to permit relator to inspect and copy said records; respondents attached to their return certain letters from Brown to relator's attorney, from Brown to Dexter and from relator's attorney to Brown as respondents' Exhibits 1, 2 and 3; respondents denied each and every other allegation of the alternative writ.

Relator filed a replication alleging that respondents' return is false in alleging that they had accorded relator the privilege of inspecting the official records of the branch office, contending that the exhibits attached to respondents' return relate to unofficial records only; the replication further alleges that respondents have accorded the privilege of inspection to another company.

Respondents filed a reply specifically denying that their return is false in the particulars claimed by relator, denying that any greater privilege of inspection had been accorded to any other person than to relator, reiterating the allegations of their return that the records of the branch office are unofficial but that they had granted to relator full privilege of inspection of all such records prior to the issuance of the alternative writ, and concluding with a general denial.

Our special commissioner finds: that the records of the branch office are official records; that relator has the right to inspect and copy such records, subject to reasonable regulations; but finds the fact to be that relator was accorded full right of inspection prior to the issuance of the alternative writ.

Relator has filed lengthy exceptions to the report of our special commissioner, said exceptions filling more than twenty-five printed pages. In somewhat different form, relator has carried these exceptions into his brief under the heading "Points and Authorities," numbered 1 to 23, inclusive.

Points 13, 18 and 20 state that mandamus is a proper remedy under the petition. This is not controverted by respondents and is conceded by us.

Points 14, 15 and 16, pertain to relator's claim that the records in question are official records which he has a right to inspect. Our special commissioner sustained this contention of relator and, while respondents still contend that the records of the branch office are unofficial, they have filed no exceptions to the report of the special commissioner. Respondents say that none of the records of the branch

office are official; that the branch offices are established solely for the convenience of the public in making applications; and that under the practice of the Motor Vehicle Commissioner, all applications are transmitted to, and all certificates issued from, the Jefferson City office. Respondents further say that no statute requires the keeping of a list such as the "ditto list."

Section 7760, Revised Statutes Missouri 1929 (Mo. Stat. Ann., p. 5181), provides for the establishment of branch offices "to receive applications for registration and certificates of ownership and to deliver certificates and number plates to applicants therefor."

Section 7772, Revised Statutes Missouri 1929 (Mo. Stat. Ann., p. 5192), provides "upon receipt of an application for registration of a motor vehicle . . . the commissioner shall file such application and register such motor vehicle . . . in a book to be kept for that purpose, under a distinctive number assigned to such motor vehicle." Then the section sets out certain specific records required to be kept and provides: "(c) the commissioner may keep such other classifications and records as he may deem necessary. (d) all such books and records shall be kept open to public inspection during reasonable business hours."

Since Section 7760 authorizes the branch office to receive applications and deliver certificates and number plates, and Section 7772 requires applications to be filed and registered as received, we think the statutes contemplate that records shall be kept in the branch offices as well as in the main office. If so, such records are "official" records or public records because the statute requires them to be kept open to public inspection.

True, the statute does not specifically refer to "ditto lists," but it does include "such other records as the commissioner may deem necessary" and the commissioner has seen fit to keep such lists in the branch office and to keep them for the very purpose of giving information to the public. Therefore, we hold such lists to be public or official records.

In point 11 relator claims that his rights should be determined as of the date of notice of his application for mandamus. Respondents contend that the decision should rest on the situation existing at the date of the issuance of the alternative writ. Relator cites: Our Rule 33; Weil v. Neary, 278 U. S. 160, 73 L. Ed. 243; In re Deckler, 36 Fed. (2d) 105; United States ex rel. International Contracting Co. v. Lamont, 155 U. S. 303, 39 L. Ed. 160; 38 C. J., sec. 574, p. 861; State ex rel. Wagner v. Fields, 263 S. W. 853. Our Rule 33 merely provides that five days' notice of the application shall be given, except in cases where the giving of notice will defeat the purpose of the writ, in which cases the notice may be dispensed with. Weil v. Neary, supra, and In re Deckler, supra, are bankruptcy cases holding that general orders or rules of court in certain cases have

the force and effect of law. United States ex rel. International Contracting Co. v. Lamont, supra, holds that mandamus cannot be used to compel the signing of a contract where the applicant is already under a valid contract to do the work at a lower figure. None of those citations touch the point under consideration. 38 Corpus Juris, page 861, section 574, is against the contention of relator, stating "in contemplation of law no cause is pending until the writ issues, the proceeding being ex parte up to that time." Also the case of State ex rel. Wagner v. Fields, supra, is opposed to relator's contention for it holds that "in mandamus, the alternative writ functions as the basic pleading in the case, occupying a position corresponding to the petition in an ordinary case, while the return takes the place of and constitutes the answer." That case was decided by the Kansas City Court of Appeals and follows a long line of decisions in this court. [State ex rel. Hathaway v. State Board of Health, 103 Mo. 22, 15 S. W. 322; State ex rel. Myers v. Shinnick, 19 S. W. (2d) 676.] We rule this point against relator.

■ Points 1, 2, 3 and 7 strike at the return of respondents. As we understand, relator contends that in mandamus a general denial is insufficient to put at issue the material allegations of the alternative writ; and that all allegations of the writ not specifically denied are taken as admitted. Relator cites many authorities. It is unnecessary to review them for they can have no application to the proceedings in this case. Here every material allegation of the alternative writ has been placed in issue by the return, either by specific denials or by allegations inconsistent with those of the writ. [State ex rel. Conran v. Williams, 96 Mo. l. c. 18, 8 S. W. 771; State ex rel. Hathaway v. State Board of Health, 103 Mo. 22, 15 S. W. 322.] The statement in the return that "all other allegations are denied" may be treated as surplusage.

■ Points 4, 5, 6, 8, 9, 10 and 12 relate to kindred subjects. As we understand it, relator claims: that Exhibit 1 attached to respondents' return amounts to an admission that relator is denied the privilege of inspecting the lists of motor vehicle licenses made up on the ditto machines; that these lists are the records in which he is particularly interested; that respondents should not have been permitted to explain Exhibit 1 nor to offer other testimony that relator had been accorded the privilege of inspecting the ditto lists prior to the issuance of the alternative writ and at all times since.

Relator cites many authorities to the effect that parties to suits are bound by the admissions contained in their pleadings. As a principle of law, that is conceded.

Respondents' Exhibit 1 is a letter from respondent Brown to relator's attorney, dated December 27, 1937, and received by said attorney on December 28, 1937, the day before relator's application was filed and the alternative writ issued in this case. We deem it un-

necessary· to set out the entire letter. It refers to relator's request to copy "the applications for certificates of ownership" in the St. Louis office; then goes on to say "I have heretofore held that the records in our St. Louis office are not public records until such ·time as they are finally and permanently lodged in our Jefferson City office;" then follows an argument as to what constitutes "official" records and then: "However, after due consideration of the matter, I have reached the conclusion that if it will be of any material benefit to your client or to any other person to make copies of these unofficial records in the St. Louis office without interference with the employees in that office, and without any way interfering with the efficient administration of the duties of that office, that their doing so is not objectionable to me. Therefore, I am instructing Mr. Dexter, in charge of the St. Louis office, to permit Mr. Eggers, or any other person interested in making copies of these unofficial applications for registrations, so to do."

Relator says that the language quoted means ·that permission was thereby granted for inspection of the applications only and not for inspection of the ditto lists; that it therefore fails to meet the allegations of the alternative writ that relator had been denied the right to inspect the ditto lists, and thus constitutes a solemn admission which cannot be contradicted or explained.

We do not agree with relator in his construction of the exhibit. Certainly the writer of the letter was arguing that *all* the records in the St. Louis office are "unofficial" and it is reasonable to conclude that he intended to grant the right to inspect all such records. Be that as it may, respondent Brown was a witness before the special commissioner and testified as follows (R. 222): "Q. When you referred in that letter to letting him examine unofficial records at the office in the City of St. Louis, what did you refer to? A. What is commonly referred to as the 'ditto report.' That is simply the communication from the Deputy Commissioner to the central office, reporting the business handled." This testimony was first received without objection, but later, when the witness was again taken over the same ground, relator's attorney made the objection that the letter is the best evidence of its meaning. We think this objection came too late. Several witnesses also testified that one copy of the "ditto list" was kept at the telephone desk in the St. Louis office, open at all times to the inspection of relator and the general public, and that this practice was followed prior to the issuance of the alternative writ. ·

In point 22 relator complains that our special commissioner did not take the oath required by statute and cites Section 981, Revised Statutes Missouri 1929 (Mo. Stat. Ann., p. 1253). That section refers to referees and requires them to take an oath "faithfully and fairly to hear . . . the cause, and to make a just, impartial and ·

true report, according to their best understanding.'' We know of no statute prescribing the oath to be taken by a special commissioner appointed by an appellate court. In the instant case our special commissioner, before hearing the testimony, took and subscribed an oath ''that I will support the Constitution of the United States and of the State of Missouri, and faithfully and impartially perform my duties as such special commissioner.'' That is substantially the oath which members of this court are required to take by Section 6, Article XIV of our Constitution and we hold it to be sufficient. Besides, relator made no objection to the form of the oath until all the evidence was taken and the transcript lodged in this court. By so doing, he has waived the right to complain on this score.

Points 17, 19 and 21 all relate to matters which are not involved in this case, such as claims made by relator that respondents furnished lists of licenses to other firms, charged and collected fees therefor and failed to pay over such fees to the state treasurer. None of such matters are mentioned in the alternative writ or in respondents' return and none of them are mentioned in relator's replication except an allegation that respondents had furnished lists to another company, without specifying the terms on which they were furnished. A large part of the record in this case is filled with the efforts of relator to offer evidence of such extraneous matters, all of which evidence was properly rejected by our special commissioner. The only issues involved or that could be raised in this case are: (1) did relator have a clear legal right to inspect the records? (2) was he denied that right at the date the alternative writ was issued? As heretofore stated, our special commissioner held as a matter of law that the records in the branch office are official records which relator has a right to inspect, subject to reasonable regulations. He also found, as a fact, that relator was not being denied the right of inspection at the time of the institution of this suit. The special commissioner did not hold, and neither do we, that relator's right to inspect and copy the records is an unlimited right. It is subject to such reasonable regulations as respondents may impose to prevent undue interference with the work of the employees of the office, and to prevent undue interference with members of the public being served at the office.

Relator's point 23 is that the special commissioner's ''conduct of the hearings and his findings indicate so conclusively his bias and partiality in favor of respondents that his report cannot stand.'' This charge is wholly without foundation. We have examined the entire record and hold that the findings of the special commissioner are correct, both as to the law and facts.

Accordingly, it is ordered that the alternative writ of mandamus be and is hereby quashed. All concur.