[Civ. No. 13925. Third Dist. Oct. 23, 1973.]

SIMON ROSENTHAL, Plaintiff and Appellant, v.
SIGMUND HANSEN, as Director, etc., et al.,
Defendants and Respondents.

## COUNSEL

Thomas R. Adams, Craig H. Scott, Ann Reese-Broadwell and Peter H. Reid for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill and Richard M. Skinner, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**VASEY, J.**\*—Plaintiff appeals from a denial by the trial court of his petition for a writ of mandate directing the defendants to furnish him copies of certain documents maintained by the Department of Human Resources Development.

### FACTS

Plaintiff is the executive director of the Legal Aid Society of San Mateo County. This society operates a federally funded legal services program providing legal representation to poor persons in San Mateo County. A substantial part of the services provided by this Legal Aid Society is representation of claimants for unemployment insurance benefits.

Defendant Hansen was Director of the California Department of Human Resources Development, and defendant Bailey was the deputy director of the department in charge of Tax Collection and Insurance Payments Division. On January 19, 1972, plaintiff by letter requested that he be furnished copies of (a) the Benefit Determination Guide; (b) all other circulated papers, memos, manuals and documents whatever their title that are used to determine or aid in the determination of an applicant's eligibility; and (c) the amendments, deletions, additions, supplements, updates and all other changes in these materials as such amendments, deletions, additions, supplements, updates and other changes become available. Plaintiff offered to pay any reasonable fee incurred in furnishing the copies.

The Benefit Determination Guide is a seven volume loose-leaf work containing guidelines for the department's use in determining a claimant's eligibility for unemployment insurance benefits. In the department's return

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

to the order to show cause, it is estimated to contain 3,783 pages. It is frequently amended. Unemployment insurance notices are temporary or short-time instructions frequently used to provide interim operating instructions pending revision of other procedural manuals or reference materials. The original request the department in its return estimates involves 80,000 to 85,000 pages of material. At the trial, or prior thereto, plaintiff limited his request for copies to the Benefit Determination Guide, the amendments thereto and unemployment insurance notices. At the hearing before this court petitioner further limited his request to such documents as are presently in existence eliminating any request for future amendments.

Copies of the requested documents are located in the offices of defendant and have been and are available to the public at all reasonable times. The department advised plaintiff that these publications would be available for inspection in departmental offices to any person requesting them. Only two limitations were imposed: first, the inspection must not be done in a manner inconsistent with the operation of the office; and, second, inspection of operating instructions as to internal administration and internal security is not permitted. These limitations are not complained of, the sole issue being the right of plaintiff to have the department prepare the copies requested.

In this regard the department responded: "Although we are happy to make these publications available to you in our offices, we must decline to supply you with copies of them at this time for several reasons. The Benefit Determination Guide is a multi-volume loose-leaf publication. Amendments are constantly being prepared and are issued on an irregular, but frequent basis. It would be nearly impossible to compute the costs of these publications and amendments and arrange for mailing and billing without making the cost of the subscription service prohibitive. The Benefit Determination Guide and other materials use numerous abbreviations and references which render them virtually unintelligible to those outside the department. They are directed to claims determination personnel with whose training and background we are familiar."

Affidavits were filed with the department's return to the order to show cause issued by the trial court. These affidavits disclose that the initial cost of printing the Benefit Determination Guide and shipping it would be $100; the amendments, comprising some 800 pages, would cost another $56, and the unemployment insurance notices, manual amendments and instructions would cost another $190. The amount set forth for future subscription service which was the largest amount of all is immaterial in

view of plaintiff's waiver of his claim thereto made during oral argument before this court. The reasonableness of these estimated costs is not in issue.

The trial court denied the petition, reciting in its proposed conclusions of law:

"1. The Benefit Determination Guide, the Amendments thereto, and the Unemployment Insurance Notices are public records within the meaning of [Gov. Code] Section 6242(d)."

"2. The California Public Records Act does not require respondents to provide petitioner with copies of public records not yet in existence.

"3. It was not the intent of the California Public Records Act to permit persons to make *general* requests of public records from state agencies. Such a rule would place an undue burden on state agencies to reproduce public records. Thus where a general request for copies of public records is made, the California Public Records Act requires that the person making the request be provided with the public records so that he may reproduce the public records himself at his own cost.

"4. The California Public Records Act requires that state agencies provide persons making a request for *specific* public records related to a *specific subject matter* at a reasonable cost." (Italics ours.)

ISSUE

It is agreed that the documents in question are public records as found by the trial court. There is no argument with the conclusion that records not in existence but to be prepared in the future are not required to be furnished as they appear. Neither is there any attack on the conclusion that plaintiff may himself make copies of any documents involved under reasonable conditions.

Thus the sole issue before us for determination is whether the Public Records Act mandates any public official or department to prepare and provide copies of all public records regardless of their nature and regardless of their bulk. Or stated another way and using the terms used in the conclusions of law of the trial court, does the act distinguish between "general" requests and "request for specific public records relating to a specific subject matter"? Does the act require the preparation and furnishing of copies by the public agency as to a "specific" request but not as to a "general" request?

### DISCUSSION

The determination of this question depends on the interpretation of the California Public Records Act (Gov. Code, § § 6250-6260) added as a new act in 1968. The parties agree that the question here presented is one of first impression in this state and that we must interpret the act without the assistance of prior adjudication directly in point.

It is clear, and the trial court so found, that the documents herein sought by plaintiff are public records. Such is conceded by the respondents and their counsel. There is no contention that defendants have failed to disclose; rather it is defendants' refusal to prepare copies and furnish such copies to plaintiff which is the basis of this action.

The act would appear literally to make the right to inspect and the right to receive copies coextensive. A careful literal reading of the statute leads to this conclusion.

We do not find in the wording of the act any reference to "general" as opposed to "specific" requests. The wording of the second sentence in section 6256 has been stressed. The first sentence gives any person the right to receive a "copy" of any "identifiable" public record. We have no hesitancy in determining that the records herein are "identifiable." Had plaintiff not waived his claim to a subscription service as to future amendments, we might have been of the opinion these future records were not now "identifiable."

The second sentence requires an "exact copy" unless it be "impracticable to do so." Grammatically, the word "impracticable" modifies the words "exact copy." We do not agree with the contention of the Attorney General that the word "impracticable" applies to the whole question of furnishing any copies at all (and presumably to the right to inspect). Had the Legislature meant to apply the test of practicability to the whole field of all copies, it would have been a simple matter to have so stated. Instead the Legislature has said impracticable "exact copies" need not be furnished. This is reasonable and necessary when we recall that we are dealing with, among other things, computer data referred to in the very next sentence. And in section 6252, it is made clear we are dealing with "sounds, or symbols . . . magnetic or paper tapes, photographic films and prints, magnetic or punched cards, discs, drums, and other documents." The exemption of impracticable copies refers to exact copies and not to all copies.

This view is amply supported in the Appendix to the Journal of the Assembly (1970 Reg. Sess.), Assembly Information Policy Committee, at page 12. It is therein stated: "Records are maintained in a variety of mediums. When kept in a computer, information may be given out in print-out form or for example, at the option of the agency, it may be released in computer card or tape form. The flexibility is designed to accommodate the various needs of the local agency and the citizen requesting information. Some form of data must be made available."

However, plaintiff's construction of the act, while adhering strictly to its letter, goes far beyond its intent and purpose. As was discussed above, the legislative history indicates that the California Public Records Act was intended to provide access to governmental records while protecting the individual's right to privacy. It was intended to insure that an individual could have access to and receive copies of documents. Plaintiff seizes upon the portion of the statute relating to the rights of an individual to receive copies and assumes therefrom that the agency has a duty to copy and provide him with lengthy administrative promulgations. The amount of time and the approximate cost to the agency of furnishing plaintiff with one copy of what he seeks has been set out above. Construction of Government Code section 6256 in the manner sought by plaintiff could result in state agencies entering the printing business. Although it may be desirable for state agencies to have available for public purchase such documents as herein sought, the California Public Records Act is not the vehicle by which such purchase can be obtained.

Applicable rules of statutory construction support the defendants' interpretation of the statutes. The basic premise of statutory construction is that the reviewing court must ascertain the intent of the Legislature in order to effectuate the purpose of the law. (*People* v. *Superior Court* (1969) 70 Cal.2d 123, 132 [74 Cal.Rptr. 294, 449 P.2d 230]; *Mercer* v. *Perez* (1968) 68 Cal.2d 104, 112 [65 Cal.Rptr. 315, 436 P.2d 315].) In compliance with this rule, the intent behind the legislation is determined from the language of the statute read as a whole; if the words of the statute given their ordinary and popular meaning are reasonably free of uncertainty, the courts will look no further to ascertain its meaning. (*Pepper* v. *Board of Directors* (1958) 162 Cal.App.2d 1, 4 [327 P.2d 928]; *People* v. *Moore* (1964) 229 Cal.App.2d 221, 228 [40 Cal.Rptr. 121]; see also *Rowan* v. *City etc. of San Francisco* (1966) 244 Cal.App.2d 308, 314 [53 Cal.Rptr. 88].) However, "It is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." (*Bruce* v. *Gregory* (1967) 65 Cal.2d 666, 673 [56 Cal. Rptr. 265, 423 P.2d 193].) "Although a court may not insert qualifying

provisions into a statute not intended by the Legislature and may not rewrite a statute to conform to an assumed legislative intent not apparent [citation], 'words of general import may be given a contracted meaning dependent upon the connection in which they are employed, and considering the general purpose or scheme entertained by the Legislature in passing the statute, and . . . words will not be given their literal meaning when to do so would evidently carry the operation of the enactment far beyond the legislative intent and thereby make its provisions apply to transactions never contemplated by the legislative body. . . .' " (*Id.* at p. 674.)

In *Bruce* v. *Gregory,* the Supreme Court limited the requirement formerly contained in Code of Civil Procedure section 1892, to wit, that a citizen has a right to inspect and have a copy of any public writing of this state, and of Government Code section 1227 that public records "are at all times *during office hours* open to public inspection . . . ." (Italics added.) In *Bruce,* appellant's contention was that the statute was absolute in operation, and under no circumstances could inspection be denied nor any limitations placed on the time or manner of inspection. This interpretation was narrowed by the Supreme Court as follows: "We cannot construe the statutes to give a member of the public priority over county officers in the use of official records. . . . This interpretation must be rejected." (*Id.* at p. 673.) The court further stated: "We therefore hold that the rights created by section 1892 of the Code of Civil Procedure and section 1227 of the Government Code, are, by their very nature, not absolute, but are subject to an implied rule of reason. Furthermore, this inherent reasonableness limitation should enable the custodian of public records to formulate regulations necessary to protect the safety of the records against theft, mutilation or accidental damage, to prevent inspection from interfering with the orderly function of his office and its employees, and generally to avoid chaos in record archives." (*Id.* at p. 676.)

The limitation expressed in *Bruce* limiting the public right of inspection by the rule of reasonableness must also apply to the right asserted by plaintiff, i.e., the right to have copies of the rules and regulations. Under this construction of the statute, plaintiff and others similarly situated will continue to have access to the desired documents. They may secure copies of specific documents but the various public departments may impose reasonable restrictions on general requests for voluminous classes of documents restricting copies to specific requests for copies of specific documents.

The judgment is affirmed.

Richardson, P. J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 3, 1974. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.